IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JIM KENNEDY**, <br><br> *Plaintiff,* <br><br> v. <br><br> **PEI-GENESIS,** <br><br> *Defendant.* | **Case No. 2:23-cv-00164-JDW** |

### MEMORANDUM

Plaintiff Jim Kennedy's Motion for Reconsideration And Entry Of A Protective Order suffers from a laundry list of defects, both procedural and substantive, that would make a college student blush. The list of flaws is almost too long to count, but I'll give it a try.

**Procedural Problems**[1]

1.  Although Mr. Kennedy styles this Motion as one for a protective order *and* to reconsider my Order Granting Defendant PEI-Genesis's Motion To Compel, it's really just a motion to reconsider because granting the protective order would block my prior Order. Seeking reconsideration via a protective order is questionable legal practice, especially because courts apply different legal standards to those motions. Mr. Kennedy

---

[1] The procedural flaws with Mr. Kennedy's Motion would be enough for me to deny it. But I'll do so based on the substantive flaws, which are even more meaningful in my view.

never states a legal standard for either type of motion, so I'll fill in the blanks for him, just so everyone can see that his motion meets neither standard.

2. Whether this is a motion for a protective order or a motion for reconsideration, it must comply with Section II.C.1 of my Policies And Procedures. It does not. Section II.C.1 limits discovery motions to five pages. A motion for a protective order is a discovery motion because it arises under Federal Rule of Civil Procedure 26. Mr. Kennedy's Motion is fifteen pages. Section II.C.1 also requires attorneys to provide specific details of the parties' efforts to resolve disputes informally, which must include verbal, non-written communications. So do Federal Rule Of Civil Procedure 26(c)(1) and Local Rule 26.1(f). Mr. Kennedy's certificate of counsel doesn't do that.

3. Section II.E of my Policies And Procedures requires parties that move for protective orders to satisfy the requirements of *Pansy v. Borough of Stroudsberg*, 23 F.3d 772 (3d Cir. 1994). Mr. Kennedy's brief doesn't mention *Pansy*, let alone address its factors.

4. Mr. Kennedy claims that I violated his right to due process because I didn't give him an opportunity to respond to PEI-Genesis's Motion To Compel. That's not true. I scheduled and held a telephone conference to discuss the Motion with the Parties pursuant to Section II.C.1 of my Policies And Procedures. That Section also notes that in most cases I decide discovery motions during the conference. I gave Mr. Kennedy's counsel an opportunity to tell me why I should deny the Motion and asked if she could cite case law supporting her arguments. She couldn't do so, and due process doesn't

obligate me to order responsive briefing on a run-of-the-mill discovery dispute just because she was unprepared. Mr. Kennedy had notice of my procedures and an opportunity to argue against the Motion. That's due process, even if it's not the process that every judge uses.

**Substantive Problems**

5.  Although Mr. Kennedy seeks a protective order, he fails to address the *Pansy* factors for issuing a protective order. He correctly quotes Rule 26(c)'s language that a judge may issue a protective order for "good cause" in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," but fails to understand that good cause doesn't exist just because he says so. The Third Circuit employs a "good cause balancing test" that considers: (1) whether disclosure will violate any privacy interests; (2) whether the information is sought for a legitimate purpose or an improper purpose; (3) whether disclosure will cause a party embarrassment; (4) whether the information is important to public health and safety; (5) whether sharing the information among litigants will promote fairness and efficiency; (6) whether the party benefitting from the order is a public entity or official; and (7) whether the case involves issues important to the public. *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 302 (3d Cir. 2010) (explaining *Pansy*'s balancing test). Mr. Kennedy's brief tangentially touches on some of these factors, but never actually does the balancing test that's required to issue a

protective order. I'll do it for him. The fourth, sixth, and seventh *Pansy* factors don't apply in this case. The others favor PEI-Genesis, not Mr. Kennedy.

First *Pansy* Factor—Violation Of Privacy Interest

6. Mr. Kennedy argues that his medical records are privileged and that I therefore shouldn't order their disclosure. His privilege argument is premised on the misconception that New Jersey statutory privileges apply to this case. They don't. As Mr. Kennedy notes, Federal Rule of Evidence 501 mandates "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." But Mr. Kennedy doesn't seem to grasp what that means. His argument is that Pennsylvania would apply New Jersey privilege law, but he never points to a claim or defense in this case for which state law supplies the rule of decision. Counts One, Two, Three, and Five of Mr. Kennedy's Complaint assert federal claims for which federal law supplies the rule of decision. That means federal privilege law applies, regardless of Count Four's state law claim. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). Therefore, Pennsylvania's choice of law rules and New Jersey statutory privileges are irrelevant.

7. Because we're in the universe of federal common law privileges, Mr. Kennedy's privilege argument has at least two fatal problems. *First*, Federal Rule Of Civil Procedure 26(b) allows for discovery of "any nonprivileged matter . . .." Fed. R. Civ. P. 26(b)(1). Federal common law doesn't recognize a physician-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (distinguishing physician-patient and psychotherapist-

4

patient relationships regarding privilege); *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 131 (E.D. Pa. 1997) (citations omitted). I won't go where no court has gone before to create a new federal privilege. *See Swanger v. Warrior Run Sch. Dist.*, 659 Fed. Appx. 120, 125 (3d Cir. 2016) ("Federal courts are reluctant to establish new evidentiary privileges."). So Mr. Kennedy's medical records are discoverable within the scope of Rule 26(b)(1).[2]

8.  *Second*, even if there were a federal physician-patient privilege, Mr. Kennedy waived it by putting his mental health at issue. As I noted in my Order granting PEI-Genesis's Motion, pleading emotional distress waives the privilege because a defendant needs to be able to probe whether other issues, stressors, or events may have caused or contributed to the plaintiff's alleged emotional distress, which may implicate both the cause and magnitude of the damages sought. I cited a bevy of cases on point, so this point of law was not a mystery to Mr. Kennedy. But for some reason, he doesn't grapple with them, or even mention them, in his Motion. Instead, he conflates them with my order to compel discovery of his medical records more generally. As I noted above, his medical records aren't privileged, so there's no privilege to waive. Because he pled emotional distress, he needs to identify his mental health providers and records.

---

[2] New Jersey law doesn't apply here, but it's worth noting that even under New Jersey law, Mr. Kennedy's argument is wrong because "[t]here is no [physician-patient] privilege under [New Jersey law] in an action in which the condition of the patient is an element or factor of the claim or defense of the patient. . .." *See* N.J.S.A. 2A:84A-22.4. Mr. Kennedy failed to note that exception in his brief, but it would doom his argument if New Jersey law applied.

9.     Mr. Kennedy's arguments regarding his constitutional right to privacy are also wrong. To start, Mr. Kennedy invokes the 14th Amendment, but that Amendment applies to the states, not to the federal government (including a federal court). Because we're talking about a *federal* court, the Fifth Amendment applies. It's also not clear that federal courts are subject to substantive due process requirements. Certainly, Mr. Kennedy hasn't cited any cases suggesting that they are, but of course Mr. Kennedy doesn't cite cases for most of the arguments that he makes. In any event, the rationale underlying substantive due process rights doesn't seem relevant to a federal court's administration of a federal lawsuit.

10.    Even assuming the Fifth Amendment guarantees a right to privacy for medical documents and that federal courts are subject to substantive due process restrictions, I can still compel their production. As every case cited that Mr. Kennedy cites makes clear: "The constitutional right to privacy is not absolute." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 528 (3d Cir. 2018); *see also Doe v. Luzerne Cnty*, 660 F.3d 169, 178 (3d Cir. 2011) ("[A] person's right to avoid disclosure of personal matters is not absolute"); *Doe v. SEPTA*, 72 F.3d 1133, 1138 (3d Cir. 1995) ("[The] right [to privacy] is not absolute"); *P.F. v. Mendres*, 21 F. Supp. 2d 476, 482 (D.N.J. 1998) ("[I]t is equally clear that . . . the right to privacy in such intimate medical information [is] not absolute) (quotations omitted)). At most, I'm required to balance Mr. Kennedy's interest in keeping his medical records private with a government interest in compelling their disclosure. *See*

6

*SEPTA*, 72 F.3d at 1139. The federal judiciary has a strong interest in the fair and efficient administration of judicial proceedings and in that a defendant can mount a complete defense. Mr. Kennedy's interest in keeping his medication and vaccination records from PEI-Genesis pales in comparison. He also had no reasonable expectation those records would remain private once he filed a lawsuit predicated on his religious beliefs related to consuming medications and vaccinations. A reasonable person would understand that filing such a lawsuit would open relevant medical records to discovery. In these circumstances, the Constitution doesn't bar me from compelling their disclosure. If anything, the Defendant's right to a fair trial compels me to do so.

11. Mr. Kennedy is wrong that providing two years of his pharmaceutical records from a CVS Pharmacy resolves this dispute and obviates the need for his medical records. The CVS records wouldn't make his medical records any less relevant or discoverable, and PEI-Genesis was free to reject his proposal. If anything, that offer is a tacit admission that Mr. Kennedy recognizes his medication history is relevant. But there are many reasons why those records are incomplete for the purposes of discovery in this case, among them that vaccinations are often administered during doctor appointments and not at a pharmacy. Notably, PEI-Genesis offered Mr. Kennedy a chance to stipulate to the fact that he takes medications and vaccinations in lieu of subpoenaing his medical records, but he declined.

Second *Pansy* Factor—Sought For A Legitimate Purpose

12. Non-privileged material is discoverable if it is "relevant to a party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). For purposes of Rule 26, relevance is "construed broadly so as to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Opppenheimer Fund, Inc. v.* Sanders, 437 U.S. 340, 251 (1978). Relevance under Rule 26 is broader than the standard for admissibility. Fed. R. Civ. P. 26(b)(1). Mr. Kennedy seems to have a different view of what's relevant in this case, and his argument that his medical records aren't relevant teeters on the precipice of bad faith.

13. When Mr. Kennedy asked for an exemption from PEI-Genesis's Covid vaccine requirement, he wrote: "I believe pursuant to my Christian faith that my body is a temple of the Holy Spirit. It is a God given responsibility for me to protect myself against anything that may defile my body or conscience. The ingestion of a medication or other chemical substances defies natural law." (ECF Nos 16-4 at 2.) In the same letter, he claimed his faith compels him to decline the consumption of vaccines and compared that belief to an Orthodox Jew's refusal to eat non-kosher food. And that claimed religious exemption is the basis for his lawsuit, so Rule 26 permits PEI-Genesis to test the truth of his claimed religious belief. I explained as much in my Order granting PEI-Genesis's motion to compel, but Mr. Kennedy doesn't seem to want to hear it.

14. Mr. Kennedy argues that his statements of belief can't be proven or disproven. To the extent he's claiming that we all just have to take his word for it, that's not how litigation works. Mr. Kennedy must prove his claim, including that he has a bona fide religious belief. If Mr. Kennedy believes that "ingestion of a medication or other chemical substances defies natural law," PEI-Genesis has the right to discover which, if any, types of chemical substances that belief allowed Mr. Kennedy to consume and to cross-examine him as to the difference between those substances and the COVID-19 vaccine. The result of that cross-examination could cause a jury to doubt Mr. Kennedy's assertion, or to believe it. Either way, it could be meaningful to Mr. Kennedy's *prima facie* case.

15. Mr. Kennedy also makes the absurd argument that the language in his requested exemption is ambiguous so, in lieu of compelling discovery of Mr. Kennedy's medical records, I should limit PEI-Genesis to asking him about his beliefs. "For more than three centuries it has now been recognized as a fundamental maxim that the public … has a right to every man's evidence" and that "there is a general duty to give what testimony one is capable of giving." *Jaffee*, 518 U.S. at 9. A robust discovery process is integral to the fairness and truth-seeking functions of our adversary system. A litigant isn't required to take his opponent's word for it. Any relevant, non-privileged documents—including medical documents—that might aid the discovery of truth are fair game.

16. Mr. Kennedy's claim for emotional distress damages also makes his medical records fair game. I understand that he says he has not sought treatment for his emotional distress. But he has still put his mental state at issue. And one place to explore a person's mental state is in his medical records, both because he might have made a comment to a physician about stress or other sources of emotional distress (it's a common question during physicals) and because physical ailments can contribute to emotional distress. That doesn't necessarily mean that the records will be admissible at trial. They might not contain anything useful for damages purposes. But discovery is broader because no one knows what's in the records until they are produced. The request is not unreasonable.

<u>Third *Pansy* Factor—Embarrassment</u>

17. Mr. Kennedy doesn't allege that disclosing the records would cause embarrassment. While everyone keeps medical records private, that doesn't translate to embarrassment from their disclosure. To the extent he hints at such embarrassment, *Pansy* requires embarrassment that is "particularly serious." *Pansy*, 23 F.3d at 787 (citations omitted). Mr. Kennedy makes no effort to satisfy that burden.

<u>Fifth *Pansy* Factor—Fairness And Efficiency</u>

18. Mr. Kennedy has made serious allegations against PEI-Genesis. Fairness requires PEI-Genesis to have an opportunity to defend itself. In our adversarial system, that means that Mr. Kennedy has to give PEI-Genesis access to the material that he

controls—or at least avoid frustrating PEI-Genesis's efforts to gather relevant material. Thus, this factor weighs strongly against the entry of a protective order.

19. I could stop there because there's no good cause to issue a protective order under *Pansy*, but I'll address Mr. Kennedy's remaining arguments as well for the sake of completeness. They're just as weak as the arguments that precede them. Mr. Kennedy's medical records are relevant, and they're not voluminous, so producing them is not unreasonably costly. Mr. Kennedy doesn't even have to produce them himself. Nor will they cause him embarrassment. So, seeking their discovery can't be intended to oppress, harass, or annoy.

20. It also doesn't matter whether PEI-Genesis raised this specific issue in its Amended Answer to Mr. Kennedy's Complaint. Defendants don't have to list every possible avenue of discovery in their responsive pleadings. The discovery is relevant to a claim or defense, and PEI-Genesis's request is for a proper purpose. I also note that when the Parties submitted to me the report of the discovery planning conference that they held pursuant to Fed. R. Civ. P. 26(f), PEI-Genesis noted that it intended to take discovery both "concerning Plaintiff's allegation that he has a sincerely held, bona [fide] religious belief" and that it would "seek Plaintiff's medical and/or psychological records." That means that Mr. Kennedy wasn't surprised by anything that's happening, even if it wasn't in the answer.

21. Mr. Kennedy cites no law in support of his waiver and estoppel arguments, probably because there isn't any. To begin with, it's unclear what kind of estoppel he thinks applies. Most types of estoppel require some sort of prejudice to or reliance by the party asserting it, but none exists here. Mr. Kennedy doesn't claim to rely on any statement by PEI-Genesis about the veracity of his religious beliefs, nor does he claim it prejudiced his ability to bring this case. The only sort of prejudice he alleges is that his suit exposed him to discovery of his medical records. But the fact he didn't consider that before filing isn't the Defendant's problem.

22. Additionally, many types of estoppel don't attach absent a prior judicial or quasi-judicial proceeding. The interactive process referenced here doesn't qualify as either. The fact that the EEOC has guidelines for dealing with religious exemptions and religious employment discrimination doesn't turn an internal business process into a courtroom. And just because the EEOC guidelines counsel a company to make a limited inquiry into an employee's beliefs doesn't mean that if it fails to specify every "bona fide doubt as to the basis for the accommodation request," it waives the ability to do so while defending a lawsuit.

23. There's also no basis to argue that omissions during internal business processes, outside the context of a lawsuit, can constitute waiver. It's unclear what standard for waiver Mr. Kennedy thinks applies in this instance, but the failure to question

an employee regarding the entirety of an accommodation request during an internal inquiry doesn't waive its ability to defend itself from a subsequent lawsuit.

24. The facts alleged in Mr. Kennedy's Complaint also undermine the basis for his waiver and estoppel argument. In the Complaint, Mr. Kennedy pleads that he refused to discuss his religious beliefs with his supervisors during the interactive process and refused to answer questions about the preparation of his accommodation requests, including the "things he put in the letter." (ECF No. 1 at 4-5.) If anything, those facts plead that PEI-Genesis tried to assuage its doubts about his religious accommodation request, not that it concealed those doubts.

25. Mr. Kennedy doesn't meet the standard for reconsideration of my order granting PEI-Genesis's motion to compel. Because there's no intervening change in law or new evidence, Mr. Kennedy needs to show that there's a "need to correct a clear error of law or fact or to prevent manifest injustice." *See U.S ex rel Schumann v. Astrazeneca Phramaceuticals L.P.*, 769 F.3d 837, 848-49 (3d Cir. 2014). He thinks that all the same reasons for the protective order, as well as his procedural due process argument, meet that standard. They don't because none of it was in error.

This Motion is short on law and steeped in chutzpah. I told the Parties during our phone conference that I didn't see a basis to deny discovery of Mr. Kennedy's medical records, and that I would not stay my Order pending any further motions. I expect that the Parties complied with my Order and that discovery continues unimpeded.

Additionally, I caution Mr. Kennedy's counsel to be mindful of her obligations under Federal Rule Of Civil Procedure 11. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

June 8, 2023

14