IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JIM KENNEDY**, *Plaintiff,* v. **PEI-GENESIS,** *Defendant.* | **Case No. 2:23-cv-00164-JDW** |

### MEMORANDUM

In American society, we respect and accommodate a variety of religious beliefs. But religion is an amorphous and deeply personal construct. And that ambiguity often leads people to invoke the shroud of religion to protect decisions that aren't. This isn't a new phenomenon, particularly when it comes to public health efforts. Some groups invoked religious belief as a reason to resist widespread smallpox vaccination. Others did so to resist fluoridization of water supplies. Most recently, many people have cast their resistance to Covid-19 vaccines as religious, as opposed to the personal preferences that they often are.

Jim Kennedy is one such person. When his employer PEI-Genesis told him he had to get a Covid-19 vaccine to keep his job, he pushed back. At some point, he claimed that his Christian faith prohibited him from taking the vaccine. And, after PEI-Genesis fired him, he claimed that the company did so for discriminatory reasons. But he doesn't have

evidence to support his claims. At most, he can show that he didn't want a vaccine, and PEI-Genesis insisted that he get one. That's not a holy war, and it's not grounds for a lawsuit. I will therefore grant PEI-Genesis's motion for summary judgment.

## I.   BACKGROUND

### A.   Factual Background

On April 21, 2022, Mr. Kennedy received and accepted an offer to join PEI-Genesis as an ASW Software Developer. At the time, PEI-Genesis had a policy requiring all employees to be vaccinated against Covid-19. After Mr. Kennedy accepted his new position, PEI-Genesis's Recruiter, Andrew Smith, told Mr. Kennedy that he would need to provide PEI-Genesis with proof of vaccination.

PEI-Genesis exempts employees from following its vaccine requirement due to medical or religious necessity. On June 6, 2022, Mr. Kennedy's supervisor, Jason Connotillo, told him that he would need to follow the company's vaccination policy to remain employed there. Mr. Kennedy expressed opposition to the policy based on his belief that the Covid-19 vaccine was unsafe, ineffective, and insufficiently researched. He didn't indicate that these beliefs were part of his religious affiliation.

Mr. Kennedy was raised Catholic and continues to identify as such, but he has not been a member of a Catholic church since 1997, nor is he currently a member of any religious congregation. He has described the religious belief that led him to reject the Covid vaccine as an attempt to follow the New Testament's mandate to "protect [him]self

against anything that may defile [his] body and or conscience" because the "ingestion of a medication or other chemical substances defies natural law." (ECF No. 33-1 at ¶ 49.)

On June 13, 2022, Mr. Kennedy submitted a religious accommodation letter seeking an exemption from PEI-Genesis's vaccine requirement. The company's Human Resources Manager, Donna Ranoia, instructed Mr. Kennedy to complete a formal request for religious accommodation form, which he did. On June 17, 2022, Mr. Kennedy attended a meeting with Ms. Ranoia and Mr. Connotillo to discuss his accommodation request. During this meeting, Ms. Ranoia and Mr. Connotillo found Mr. Kennedy's demeanor inappropriate for an employee. Afterwards, Ms. Ranoia informed Mr. Kennedy that he had been terminated for insubordinate behavior during that day's meeting.

### B.     Procedural History

Mr. Kennedy filed his Complaint on January 15, 2023. He asserts claims under Title VII of the Civil Rights Act of 1964, analogous provisions of the Pennsylvania Human Relation Act (PHRA), and the Americans With Disabilities Act (ADA), claiming his former employer failed to accommodate his religious practice, created and permitted a hostile work environment, enacted a policy with a disparate impact on Christians, and negatively regarded him as disabled. Following discovery, PEI-Genesis moved for summary judgment, which I now grant.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A)-(B).

The provisions of the Pennsylvania Human Relation Act are coextensive with those of Title VII. *Atkinson v. LaFayette Coll.,* 460 F.3d 447, 454 n. 6 (3d Cir. 2006). Therefore, a claim that fails under Title VII's framework cannot survive under the PHRA.

### III.  DISCUSSION

#### A.  Religious Affiliation

Two of Mr. Kennedy's claims under Title VII require a showing that animus towards him based on his religion motivated PEI-Genesis's conduct. *See Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017) (failure to accommodate); *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001) (hostile work environment). Mr. Kennedy's failure to demonstrate that a sincerely held religious belief prohibits vaccination is enough to grant summary judgment, but there are additional deficiencies for his hostile work environment claim.

##### 1.  Mr. Kennedy's religious motivations

To establish a *prima facie* case of religious discrimination under Title VII based on a failure to accommodate theory, a plaintiff must show that (a) he held a sincere religious belief that conflicted with a job requirement, (b) he informed his employer of the conflict, and (c) the employee was disciplined for failing to comply with the conflicting requirement." *Fallon*, 877 F.3d at 490; *see also Brown v. Children's Hosp. of Philadelphia*, 794 F. App'x. 226, 227 (3d Cir. 2020). This analysis requires a judge to differentiate "between those whose views [are] religious in nature and those whose views [are] 'essentially political, sociological, or philosophical.'" *Fallon*, 877 F.3d at 490 (citation omitted).

5

The Third Circuit has articulated three factors for assessing whether a particular view qualifies as a religious belief: (a) "a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters;" (b) "a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching" and (c) "a religion often can be recognized by the presence of certain formal and external signs." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981). As to the first factor, beliefs address fundamental and ultimate questions when they consider and attempt to come to terms with what could best be described as ultimate questions—questions having to do with, among other things, life and death, right and wrong, good and evil. *See id.* at 1033. As to the second factors, beliefs are comprehensive in nature when they "consist of something more than a number of isolated, unconnected ideas." *Id.* at 1035. Thus, it cannot be "generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* (citation omitted). As to the third factor, courts look to formal, external, or surface signs that may be analogized to accepted religions, like formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays, and other manifestations associated with traditional religions. *See Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979); *see also Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023).

Mr. Kennedy has not demonstrated that his opposition to a Covid vaccine requirement is religious. He claims that he is a "Christian," which is certainly an organized religion. But his opposition to the Covid vaccine is not a product of Christianity's comprehensive system of beliefs about fundamental or ultimate matters. Instead, it is an isolated view based on a single moral teaching: that he should not defile his body. But even then, his practice is inconsistent. He puts some medicines in his body, but not others. No reasonable juror could conclude that his opposition to the vaccine is a product of deep and imponderable questions. Instead, "[a]t best, it reflects a personal medical judgment about the necessity of Covid-19 vaccination rigged out with religious verbiage." *Rodrique v. Heart Commc'ns, Inc. et al.*, Civ. A. No. 22-12152-RGS, 2024 WL 733325, at *2 (D. Mass. Feb. 22, 2024). But the "use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Passarella v. Aspirus, Inc.*, No. 22-cv-287-jdp, 2023 WL 2455681, at *6 (W.D. Wis. Mar. 10, 2023). Other judges in this District have rejected similar claims about the Covid-19 vaccine for similar reasons.[1] I will therefore grant PEI-Genesis's motion as to the failure to accommodate and hostile work environment claim. And, because Mr. Kennedy fails at the *prima facie* stage of his case, I

---

[1] *E.g.*, *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, Civ. A. No. 21-4024, 2021 WL 4399672 at *7 (E.D. Pa. Sep. 27, 2021); *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 5807840, at *3 (E.D. Pa. Sept. 7, 2023). Mr. Kennedy wants me to find that his subjective beliefs about what he should or should not do with his body are shielded by religious freedom. I can't. *Africa*, 662 F.2d at 1035.

do not need to decide whether he has sufficient evidence of pretext to survive summary judgment.

## 2. Other problems with the hostile work environment claim

To make out a *prima facie* claim for a religiously hostile work environment under Title VII, the plaintiff must show that the "complained-of conduct (1) would not have occurred but for the employee's [religion]; and it was (2) severe or pervasive enough to make a (3) reasonable [person of the same religion] believe that (4) the conditions of employment were altered and the working environment was hostile or abusive." *Hurley v. Atlantic City Police Dep't,* 174 F.3d 95, 114 (3d Cir.1999), *cert. denied,* 528 U.S. 1074 (2000). I find several deficiencies in Mr. Kennedy's claim when I consider it under this rubric.

*First*, nothing in the record suggests that PEI-Genesis acted with religious hostility that was severe or pervasive. "A hostile work environment claim is composed of **a series of separate acts** that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)) (emphasis added). While a single example of truly outrageous conduct can give rise to a hostile work environment in some instances, "isolated incidents (unless extremely serious)" are not enough. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Mr. Kennedy insists that he was subject to religious animus from his employer. But this

conclusory statement, without any reference to specific examples, can't be used as a proxy for severe or pervasive hostility.

*Second*, although Mr. Kennedy insists he felt that PEI-Genesis was hostile to his religious beliefs, he hasn't introduced any evidence to suggest that a reasonable person of his religion would feel the same way. There is, understandably, some difficulty in doing so: Mr. Kennedy describes a niche interpretation of the Christian faith where he is not a regular parishioner, does not have a spiritual leader, but adheres closely to a particular verse from the New Testament. Still, it's his burden to satisfy this prong of the test for a hostile work environment claim, and Mr. Kennedy has ignored it.

### B.    Disparate Impact

To demonstrate the existence of an employment policy with a disparate impact on members of a protected class, a plaintiff must show that "application of a facially neutral standard has caused a 'significantly discriminatory hiring pattern.'" *Newark Branch, NAACP v. Bayonne, N.J.*, 134 F.3d 113 at 121 (3d Cir. 1998) (quoting *Newark Branch, NAACP v. Town of Harrison, N.J.,* 940 F.2d 792, 798 (3d Cir. 1991)). In nearly all circumstances, the plaintiff must prove the existence of a significant statistical disparity and "demonstrate that the disparity [he] complain[s] of is the result of one or more of the employment practices that [he is] attacking." *Id.*; *NAACP v. N Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476-77 (3d Cir. 2011). Identifying a statistically significant difference between the percentage of members of a protected class in a particular workplace and

the percentage of members of that same class in the embracing labor market is essential to making out a *prima facie* case of disparate impact.

Mr. Kennedy hasn't offered anything that suggests that those who share his religious beliefs are underrepresented at PEI-Genesis, much less that their underrepresentation is the result of the company's Covid vaccination policy. I know next to nothing about the religious makeup of the company's workforce because Mr. Kennedy hasn't told me. I don't know who the policy affected or what their religious affiliation is. Without that information, there's no way that Mr. Kennedy can pursue his disparate impact claim.

### C. Regarded As Disabled

To succeed on a claim for disability discrimination, a plaintiff must show that he is (1) a disabled person within the meaning of the ADA who is (2) otherwise qualified to work without accommodation but has (3) suffered an adverse employment decision as a result of discrimination. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). A person qualifies as "disabled" under the ADA if he is regarded as having a physical or mental impairment that substantially limits one or more of his major life activities. *Keyes v. Catholic Charities of the Archdiocese of Phila.,* 415 Fed. App'x. 405, 409 (3d Cir. 2011) (citing 42 U.S.C. § 12102(2)).

Mr. Kennedy has not mustered evidence to support a *prima facie* case. The major life activity that he describes is "working." (ECF No. 34 at 23.) Where the major life activity

at issue in an ADA case is "work," the term "substantially limited" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir. 1998). But Mr. Kennedy has not demonstrated that PEI-Genesis, or anyone there, thought he or anyone else without a Covid vaccine could not perform a job. The only evidence that he offers is that PEI-Genesis's CEO thought that those with immunizations were better equipped to fight a Covid infection than those without those vaccines. But that view does not translate to perceiving those with less immunity as "disabled." The possibility that those without a vaccine were more likely to get sick or more likely to have a severe illness does not mean that they had a condition that prevented them from working, though it might have made them more likely to call out sick and therefore made the company less productive.

Even if Mr. Kennedy had evidence that PEI-Genesis regarded him as disabled, his claim would fail because, by Mr. Kennedy's own admission, no one at PEI-Genesis said anything to suggest they perceived him as disabled, nor did he suffer any adverse employment decisions because of a perceived disability. As he tells it, "[Y]ou just had to be there." (ECF No. 33-4 at 133.) I wasn't. Mr. Kennedy was, but he hasn't been able to describe any specific instances of adverse action based on the belief that he was disabled. His subjective belief of what his colleagues believed about his health can't sustain a claim under the ADA.

11

**IV.    CONCLUSION**

I believe that Mr. Kennedy did not (and probably still does not) want a Covid-19 vaccine. But he has no evidence that that preference is borne of religious belief. Nor does he have evidence that PEI-Genesis discriminated against him when it fired him. I will therefore grant PEI-Genesis's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 27, 2024